UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 4652

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PETROLEUM COMPANY OF TRINIDAD
AND TOBAGO LIMITED,

                 Petitioner,

      v.

WORLD GTL INC. and WORLD GTL OF
ST. LUCIA LTD.,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No.

RECEIVED
JUN 25 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PETITION TO CONFIRM FOREIGN ARBITRATION AWARD</u>

**SIDLEY AUSTIN LLP**
Louis B. Kimmelman
Dana MacGrath
Kenneth B. Meyer
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5200
Facsimile: (212) 839-5599

*Counsel for Petitioner Petroleum
Company of Trinidad and Tobago
Limited*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

    A.    The Project Structure and the GCA ........................................................... 2

    B.    Petrotrin and WGTL Agreed to Arbitrate All Disputes ............................ 3

    C.    WGTL Breached the GCA ........................................................................ 4

    D.    The Arbitration ........................................................................................ 4

    E.    The Final Arbitration Award .................................................................... 6

    F.    Proceedings in Canada ............................................................................. 7

ARGUMENT .......................................................................................................................... 7

I.    The Final Award is Governed by the New York Convention ............................... 7

II.    Jurisdiction and Venue Are Proper in This Court ............................................... 9

    A.    This Court Has Subject Matter Jurisdiction ............................................. 9

    B.    This Court Has Personal Jurisdiction Over World GTL, Inc., and World GTL St. Lucia ......................................................................................... 9

    C.    Venue in This Court is Appropriate ....................................................... 11

III.    The Convention Requires Confirmation of the Final Award .............................. 12

IV.    Pre- And Post- Judgment Interest Should Be Awarded .................................... 13

V.    Petrotrin Should Be Awarded Reasonable Attorneys' Fees and Costs .............. 16

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Capponi v. Murphy,*
  772 F. Supp. 2d 457 (S.D.N.Y. 2009) ................................................................9

*Carina Int'l Shipping Corp. v. Adam Mar. Corp.,*
  961 F. Supp. 559 (S.D.N.Y. 1997) ...................................................................16

*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.,*
  888 F.2d 260 (2d Cir. 1989)............................................................................14

*Daum Global Holdings Corp. v. Ybrant Digital Ltd.,*
  No. 13 Civ. 03135, 2014 WL 896716 (S.D.N.Y. Feb. 20, 2014) ............................7

*Elite Inc. v. Texaco Panama Inc.,*
  777 F. Supp. 289 (S.D.N.Y. 1991) ...................................................................16

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,*
  156 F.3d 310 (2d Cir. 1998)........................................................................8, 12

*Greenway v. Buffalo Hilton Hotel,*
  143 F.3d 47 (2d Cir. 1998).............................................................................15

*IHX (UK) Ltd. v. Ashapura Minechem Ltd.,*
  No. 08 Civ. 9436 (SAS), 2009 WL 3169541 (S.D.N.Y. Oct. 1, 2009) ...................15

*Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.,*
  965 F. Supp. 2d 308 (S.D.N.Y. 2013)................................................................12

*Nat'l Dev. Co. v. Khashoggi,*
  781 F. Supp. 959 (S.D.N.Y. 1992) ...................................................................13

*NTT DoCoMo, Inc. v. Ultra d.o.o.,*
  No. 10 Civ. 3823 (RMB), 2010 WL 4159459 (S.D.N.Y. Oct. 12, 2010)................16

*P.M.I. Trading Ltd. v. Farstad Oil, Inc.,*
  No. 00 Civ. 7120 (RLC), 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) ....................14

*Sarhank Grp. v. Oracle Corp.,*
  No. 01 Civ. 1285 (DAB), 2004 WL 324881 (S.D.N.Y. Feb. 19, 2004).............13, 14

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,*
  198 F.3d 88 (2d Cir. 1999).............................................................................7

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
    -- F.3d --, 2014 WL 1645255 (2d Cir. Apr. 25, 2014) ..........................................................10

*Steelex S.A. v. Dasil Corp.,*
    No. 07-CV-2309, 2007 WL 4373262 (E.D.N.Y. Dec. 10, 2007) ......................................13

*TermoRio S.A. E.S.P. v. Electrana S.P.,*
    487 F.3d 928 (D.C. Cir. 2007) ..............................................................................................7

*The Rockefeller Univ. v. Ligand Pharm.,*
    591 F. Supp. 2d 461 (S.D.N.Y. 2008) ..................................................................................11

*Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.,*
    737 F.2d 150 (2d Cir. 1984) ................................................................................................13

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ...............................................................................................9, 10

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997) ..................................................................................................12

**STATUTES**

9 U.S.C. § 201 ...............................................................................................................................7

9 U.S.C. § 203 ...................................................................................................................8, 10, 14

9 U.S.C. § 204 .............................................................................................................................10

9 U.S.C. § 207 .............................................................................................................................12

9 U.S.C. § 207 ...........................................................................................................................1, 2

28 U.S.C. § 1391(b) ....................................................................................................................11

28 U.S.C. § 1391(b)(1) ...............................................................................................................11

28 U.S.C. § 1391(c)(2) ................................................................................................................11

28 U.S.C. § 1961(a) ...............................................................................................................14, 15

C.P.L.R. § 301 .........................................................................................................................9, 11

Petitioner Petroleum Company of Trinidad and Tobago Limited ("Petrotrin"), by and through its counsel, respectfully submits this memorandum of law in support of its Petition to confirm a foreign arbitration award and to enter judgment thereon plus interest and the fees and expenses incurred in the confirmation process.

## PRELIMINARY STATEMENT

This is a proceeding under Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207 (2006), to confirm a foreign arbitral award and to have judgment entered thereon. On November 29, 2012, an arbitral tribunal seated in Toronto, Canada issued an unanimous, final award (the "Final Award") in favor of Petrotrin and against World GTL Inc. ("WGTL Inc.") and World GTL of St. Lucia ("WGTL St. Lucia") (collectively, "WGTL"). *See* Declaration of Louis B. Kimmelman, dated June 24, 2014 ("Kimmelman Declaration"), Exhibit A.

The tribunal that issued the Final Award (the "Tribunal") was composed of three members: (i) David R. Haigh, Q.C., a Partner at Burnet, Duckworth & Palmer LLP in Calgary, Canada, who served as the Chair of the Tribunal; (ii) Evan W. Gray, Counsel at Lebow & Sokolow LLP in New York; and (iii) Dr. Julian D. M. Lew, Q.C., a barrister with chambers at 20 Essex Street, London, England, who is also Head of the School of International Arbitration, Centre for Commercial Law Studies, Queen Mary, University of London. *See* Kimmelman Declaration ¶¶ 24-26.

The Tribunal determined in the Final Award that WGTL Inc. and WGTL St. Lucia breached their respective obligations under the Guarantee Contribution Agreement (the "GCA") and ordered specific performance of those obligations, as well as compensation for accrued interest and payment of the costs of the arbitration and most of Petrotrin's attorneys' fees and

expenses. *See* Kimmelman Declaration ¶¶ 38-41; Exhibit A, Final Award ¶¶ 239(a), (b), (c), and (f).

Petrotrin now seeks to confirm the Final Award pursuant to 9 U.S.C. § 207 and have judgment entered thereon, to recover interest on the amounts due Petrotrin under the Final Award and to recover the fees and expenses incurred in confirming the Final Award.

## BACKGROUND

**A.     The Project Structure and the GCA**

On September 22, 2005, Petrotrin, WGTL Inc., and WGTL St. Lucia entered into a Project Agreement in connection with the construction and operation of a small-scale gas-to-liquids plant on Petrotrin's refinery grounds in Pointe-a-Pierre, Trinidad (the "Project"). Kimmelman Declaration ¶ 4; Exhibit B.

On January 19, 2006, Petrotrin, WGTL St. Lucia, and the project company, World GTL Trinidad Limited ("WGTL Trinidad"), entered into a Shareholders Agreement, pursuant to which WGTL St. Lucia and Petrotrin agreed to subscribe to 51% and 49% of the common shares of WGTL Trinidad, respectively.  Kimmelman Declaration ¶ 5; Exhibit C.

To finance construction of the Project, Credit Suisse and WGTL Trinidad entered into a Credit Agreement on January 12, 2007, which was amended on May 4, 2007 (the "Credit Agreement"), pursuant to which Credit Suisse agreed to loan US$ 125,009,479 to WGTL Trinidad.  Kimmelman Declaration ¶ 6.

Under the Credit Agreement, WGTL Trinidad's failure to meet certain performance benchmarks by July 12, 2009, constituted a "Fundamental Event of Default," pursuant to which Credit Suisse was entitled to declare the loan, including interest, immediately due and payable. *Id.* ¶ 7.

On January 12, 2007, Petrotrin, WGTL Inc., and Credit Suisse entered into a Sponsor Guarantee and Funding Agreement, which was amended on May 4, 2007 (the "Sponsor Guarantee"), pursuant to which WGTL Inc. and Petrotrin jointly and severally guaranteed certain Project debts and further agreed to make further equity contributions in the event of Project cost overruns. *Id.* ¶ 8; Exhibit D.

On January 12, 2007, Petrotrin, WGTL Inc., WGTL St. Lucia, and WGTL Trinidad entered into the GCA. Kimmelman Declaration ¶ 9; Exhibit E. The GCA provided that if Petrotrin and WGTL Inc. were required to make equity contributions under the Sponsor Guarantee and one of the parties could not do so, then the other party would be required to advance the equity contribution on behalf of the party unable to do so. Kimmelman Declaration ¶ 10; Exhibit E § 2.2. Each such advance was defined as an Over-contribution Advance in the GCA. *Id.*

Each Over-contribution Advance would become due and payable on or before the first anniversary of the day it was made. Kimmelman Declaration ¶ 11; Exhibit E § 4.1. If an Over-contribution Advance made by Petrotrin was not repaid within two years after the date on which it was made, then Petrotrin would be entitled to receive additional shares of WGTL Trinidad based on a formula in Clause 4.2 of the GCA. Kimmelman Declaration ¶ 12; Exhibit E § 4.2. WGTL St. Lucia was required under the GCA to take such steps as required to ensure that WGTL Trinidad issued new shares. Kimmelman Declaration ¶ 13; Exhibit E § 4.4.

### B.     Petrotrin and WGTL Agreed to Arbitrate All Disputes

The parties agreed in Clause 13.2 of the GCA that "[a]ll disputes arising out of or in connection with the [GCA] shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." Kimmelman Declaration ¶ 14; Exhibit E § 13.2.

### C.   **WGTL Breached the GCA**

The Project was over budget and behind schedule. Kimmelman Declaration ¶ 16. As a result, between April 2007 and September 2009, Credit Suisse made 33 demands for equity contributions from Petrotrin and WGTL Inc. to fund the cost overruns. *Id.* ¶ 16. WGTL Inc. notified Petrotrin of its inability to fund its portion of each Credit Suisse demand. *Id.* ¶ 17. WGTL Inc., WGTL St. Lucia, and WGTL Trinidad then agreed to and co-signed a letter (each an "Overrun Letter") pursuant to which Petrotrin agreed to fund both its and WGTL Inc.'s share of the required equity contribution. *Id.* Each Overrun Letter also restated the parties' agreement that the payment was made subject to the GCA. *Id.*

In total, Petrotrin paid $97,107,993 on behalf of WGTL Inc. and $93,299,837 on its own behalf. *Id.* ¶ 18. However, WGTL Inc. never repaid any of the 33 Over-contribution Advances and never transferred any shares of WGTL Trinidad to Petrotrin. *Id.* ¶ 19. WGTL Inc. therefore breached its obligations under Clause 4.2 of the GCA. *Id.*

WGTL St. Lucia did not take the steps necessary to ensure that WGTL Trinidad issued new shares to Petrotrin. *Id.* ¶ 20. WGTL St. Lucia therefore breached its obligations under Clause 4.4 of the GCA. *Id.*

### D.   **The Arbitration**

On February 23, 2010, Petrotrin submitted WGTL's breach of the GCA to arbitration before the International Court of Arbitration of the International Chamber of Commerce (the "ICC") by filing a Request for Arbitration. *Id.* ¶ 21.

WGTL submitted its Answer to Petrotrin's Request for Arbitration on April 26, 2010. *Id.* ¶ 22. WGTL did not assert any counterclaims against Petrotrin in its Answer. *Id.*

On May 7, 2010, the parties agreed that the seat of the arbitration would be Toronto, Canada. *Id.* ¶ 23.

4

On March 12, 2010, Petrotrin nominated Dr. Lew to serve as an arbitrator. *Id.* ¶ 24. The ICC confirmed Dr. Lew as an arbitrator on August 6, 2010. *Id.*

On July 7, 2010, WGTL nominated Mr. Gray to serve as an arbitrator. *Id.* ¶ 25. The ICC confirmed Mr. Gray as an arbitrator on August 6, 2010. *Id.*

On September 22, 2010, the party-nominated arbitrators nominated Mr. Haigh as the Chair of the Tribunal, and the ICC confirmed his appointment on October 28, 2010. *Id.* ¶ 26.

On December 8, 2010, the parties attended a preliminary hearing before the Tribunal in New York City. *Id.* ¶ 27. At this hearing pursuant to Article 18 of the ICC Rules of Arbitration (1998) (the "ICC Rules"), Petrotrin and WGTL finalized the Terms of Reference, which outlined the claims and defenses before the Tribunal. *Id.* Petrotrin and WGTL also agreed on a procedural timetable for the arbitration, which the Tribunal issued on December 15, 2010. *Id.* ¶ 28.

On June 15, 2011, new counsel for WGTL requested an extension of the procedural timetable to allow WGTL to file a counterclaim against Petrotrin. *Id.* ¶ 29.

On July 7, 2011, the Tribunal issued an amended procedural timetable that extended the time for WGTL to file its Statement of Defense until August 24, 2011, and allowed WGTL to include with its Statement of Defense a written application for leave to pursue a counterclaim, along with a draft counterclaim. *Id.* ¶ 30.

WGTL filed its Statement of Defense, an application for leave to pursue a counterclaim, and a draft counterclaim on August 24, 2011. *Id.* ¶ 31. Petrotrin submitted its response to WGTL's application on September 7, 2011. *Id.*

On October 5, 2011, the Tribunal issued Procedural Order No. 3, which denied WGTL's application for leave to proceed with the draft counterclaim, without prejudice to the right to assert any defenses or equitable set-offs in the arbitration. *Id.* ¶ 32; Exhibit F ¶ 16.

On May 8-9, 2012, the Tribunal conducted a hearing on the merits in New York City and declared the proceedings closed on August 22, 2012. Kimmelman Declaration ¶¶ 33-34.

### E.    The Final Arbitration Award

The Tribunal made and issued its Final Award on November 29, 2012, in Toronto, Canada. *Id.* ¶ 35; Exhibit A, Final Award. On December 31, 2012, Petrotrin applied to the Secretariat of the ICC for the correction of certain typographical errors in the Final Award, pursuant to Article 29(2) of the ICC Rules. Kimmelman Declaration ¶ 36. The Tribunal issued an Addendum To Final Award (the "Addendum") correcting the errors on March 13, 2013. *Id.* ¶ 37; Exhibit A, Addendum.

In the Final Award (as corrected by the Addendum), the Tribunal declared that WGTL Inc. and WGTL St. Lucia had breached their obligations under Clauses 4.2(ii)(b) and 4.4 of the GCA, respectively. *See* Kimmelman Declaration ¶ 38; Exhibit A, Final Award ¶ 239(a). The Tribunal ordered WGTL Inc. and WGTL St. Lucia to specifically perform their obligations under Clauses 4.2(ii)(b) and 4.4 of the GCA, respectively. *See* Kimmelman Declaration ¶ 39; Exhibit A, Final Award ¶ 239(b); Exhibit A, Addendum ¶ 17(e). The Tribunal further ordered WGTL Inc. to transfer, and WGTL St. Lucia to take the steps necessary to effect the transfer of, additional shares of WGTL Trinidad as compensation for accrued interest on unpaid Over-contribution Advances. *See* Kimmelman Declaration ¶ 40; Exhibit A, Final Award ¶ 239(c); Exhibit A, Addendum ¶ 17(e). Finally, the Tribunal ordered that WGTL pay the costs of the arbitration plus a major portion of Petrotrin's attorneys' fees and expenses in the arbitration,

amounting to $2,334,220.21.  *See* Kimmelman Declaration ¶ 41; Exhibit A, Final Award ¶ 239(f).

F.        **Proceedings in Canada**

On March 1, 2013, counsel for Petrotrin received an email from counsel for WGTL in Canada attaching a copy of a Notice of Application and Application under Article 34 of the UNCITRAL Model Law on International Commercial Arbitration dated February 28, 2013, in the Ontario Superior Court of Justice.  Kimmelman Declaration ¶ 42.  The Application seeks "an order setting aside the award of costs to [Petrotrin] in paragraph 239(f) of the Final Award dated November 29, 2012."  *Id.*, Exhibit G, at 3.  It does not seek to set aside any other portion of the Award other than the provision awarding costs.  Petrotrin was not served with the Notice of Application and Application or any other papers relating to a proceeding in Toronto.  Furthermore, after filing of the Application on February 28, 2013, it appears that WGTL has done nothing further in the case.  Kimmelman Declaration ¶¶ 43-45; Exhibit H.

## ARGUMENT

I.        **The Final Award is Governed by the New York Convention**

The Final Award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (1970) (the "New York Convention"), to which the United States and Canada are parties.[1]  The United States implemented the New York Convention in Chapter 2 of the FAA.  9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.").

--------

[1] Up-to-date information on parties to the New York Convention is available through the United Nations Treaty Collection, Chapter XXII on Commercial Arbitration, and through the United Nations Commission on International Trade Law, *available at* www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

7

Arbitration agreements and awards fall under the Convention when four elements are established: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (internal citations omitted). *See also TermoRio S.A. E.S.P. v. Electrana S.P.*, 487 F.3d 928, 934 (D.C. Cir. 2007) ("Under the Convention, the critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration.") (internal quotation marks and citation omitted); *Daum Global Holdings Corp. v. Ybrant Digital Ltd.*, No. 13 Civ. 03135, 2014 WL 896716, at *2 (S.D.N.Y. Feb. 20, 2014) (stating that the "New York Convention and Federal Arbitration Act apply to this petition to confirm an award from a commercial arbitration [in Singapore] that is not entirely between citizens of the United States") (internal citations omitted).

These requirements are satisfied here. The parties' written arbitration agreement provides that "[a]ll disputes arising out of or in connection with the [GCA] shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." Kimmelman Declaration ¶ 14; Exhibit E § 13.2. Because the seat of this arbitration was Toronto, Canada, the Final Award was made "in the territory of a State other than the State where the recognition and enforcement [is] sought." N.Y. Conv. Art. I(1). The dispute giving rise to this arbitration involved commercial contract performance in the Republic of Trinidad and Tobago involving a foreign party. Clearly, the Final Award is a New York Convention award.

8

## II.   Jurisdiction and Venue Are Proper in This Court

### A.   This Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction to confirm arbitral awards under the New York Convention. *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998) ("District courts have been given original jurisdiction over actions or proceedings falling under the Convention, and any party to a foreign arbitration may seek confirmation in a district court of an arbitral award within three years after the award is made.") (internal citations omitted).

### B.   This Court Has Personal Jurisdiction Over World GTL, Inc., and World GTL St. Lucia

This Court has personal jurisdiction over WGTL Inc. because it is a domestic corporation, incorporated under the laws of the state of New York, with its principal office located in New York City. *See* N.Y. C.P.L.R. § 301; *Capponi v. Murphy*, 772 F. Supp. 2d 457, 470 (S.D.N.Y. 2009) (finding defendant "is subject to the general jurisdiction of this Court as it is incorporated and doing business in New York") (internal citation omitted); *see also* Kimmelman Declaration, Exhibit A, Final Award ¶ 6.

This Court also has personal jurisdiction over WGTL St. Lucia, a corporation organized under the laws of St. Lucia with its principal office in New York, New York. *See* Kimmelman Declaration, Exhibit A, Final Award ¶ 7. Under New York law, "a foreign corporation is subject to general personal jurisdiction in New York [under Section 301 of the CPLR] if it is doing business in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)

(internal citations and quotation marks omitted).  In determining whether a corporation is "doing business" in New York, state and federal courts

> have focused on a traditional set of indicia: for example, whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests.

*Wiwa*, 226 F.3d at 98 (internal citations omitted).

WGTL St. Lucia meets these requirements.  WGTL St. Lucia maintains its "principal office" in New York City.  *See* Kimmelman Declaration, Exhibit A, Final Award ¶ 7; Exhibit E § 5.  In both the GCA and Shareholders Agreement, WGTL St. Lucia identified its New York address as the address for purposes of sending notices under these agreements.  Kimmelman Declaration, Exhibit E ¶ 5; Exhibit C ¶ 12.  WGTL St. Lucia therefore has been "doing business" in New York and is subject to the general personal jurisdiction of this Court.  *See Wiwa*, 226 F.3d at 98-99 (continuous presence of defendant's Investor Relations Office in New York generated sufficient contacts to satisfy the "doing business" standard and conferred general jurisdiction under N.Y. C.P.L.R. § 301).

The contacts of both respondents with the State of New York also satisfy constitutional due process requirements.  As the Second Circuit explained in *Sonera Holding B.V. v. Cukurova Holding A.S.*:

> The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home.  For a corporation, it is an equivalent place, with the place of incorporation and *the principal place of business being the paradigm bases*.  "Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable."

-- F.3d --, 2014 WL 1645255, at *3 (2d Cir. Apr. 25, 2014) (per curiam) (quoting *Daimler AG v. Bauman*, -- U.S. --, 134 S.Ct. 746, 760 (2014)) (emphasis added); *see also Wiwa*, 226 F.3d at 99

("The required due process inquiry itself has two parts: whether a defendant has minimum

contacts with the forum state and whether the assertion of jurisdiction comports with traditional

notions of fair play and substantial justice—that is whether the exercise of jurisdiction is

reasonable under the circumstances of a particular case.") (internal citation, quotation marks and

alterations omitted).

Here, WGTL Inc. is incorporated in New York, and WGTL St. Lucia admits that

its "principal office" is located at 140 Broadway, Suite 4600 New York, New York

10005. Both respondents are "at home" in New York, and the exercise of jurisdiction

over them is consistent with due process. *See Sonara Holding B.V.*, 2014 WL 1645255,

at *3. *See also* Kimmelman Declaration, Exhibit A, Final Award ¶¶ 6-7; Exhibit E § 5.

### C.   <u>Venue in This Court is Appropriate</u>

Venue is appropriate under the Federal Arbitration Act because "[a]n action or

proceeding over which the district courts have jurisdiction pursuant to section 203 of this title

may be brought in any such court in which save for the arbitration agreement an action or

proceeding with respect to the controversy between the parties could be brought." 9 U.S.C.

§ 204.

Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), which provides that:

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all

defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

Both WGTL Inc. and WGTL St. Lucia reside in New York for venue purposes. *See* 28

U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued in

its common name under applicable law, whether or not incorporated, shall be deemed to reside,

if a defendant, in any judicial district in which such defendant is subject to the court's personal

jurisdiction with respect to the civil action in question . . . ."); *The Rockefeller Univ. v. Ligand*

*Pharm.*, 591 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (finding venue proper under § 1391(c)(2) where corporate defendant was subject to general jurisdiction under N.Y. C.P.L.R. § 301 based on its authorization to do business in New York).

**III.    The Convention Requires Confirmation of the Final Award**

There is a presumption that an arbitral award governed by the New York Convention will be confirmed.  Article III of the New York Convention states:

> Each Contracting State *shall* recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon.

N.Y. Conv. Art. III (emphasis added).  Section 207 of the FAA also provides that courts "shall" confirm arbitration awards under the Convention unless one of the seven grounds for refusal provided in Article V of the Convention applies:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added).  In discharging this duty, the Second Circuit has held that a district court's review of a foreign arbitral award governed by the New York Convention is "strictly limited."  *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997); *see also Marker Volkl (Int'l) GmbH v. Epic Sports Int'l, Inc.*, 965 F. Supp. 2d 308, 310 (S.D.N.Y. 2013) ("[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.") (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

Furthermore, the party challenging the award bears the burden of proving a basis for non-enforcement.  *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir.

1998) ("The party opposing enforcement has the burden of proving the existence of one of these enumerated defenses.").

In this case, no such basis exists.  Petrotrin and WGTL are sophisticated parties that agreed to arbitrate "all disputes arising out of or in connection with the [GCA]."  Kimmelman Declaration ¶ 14; Exhibit E § 13.2.  The Tribunal was properly constituted by the ICC in accordance with the GCA.  *See* Kimmelman Declaration ¶¶ 14, 21-27.

Once the arbitration had been initiated, Petrotrin and WGTL both participated fully, attending a preliminary hearing in New York, where they agreed to the Terms of Reference and a procedural timetable.

The Tribunal held a two-day hearing on the merits.  After considering all of the submitted evidence, the Tribunal issued a unanimous Final Award fully addressing the arguments of both parties.  *See id.*, Exhibit A.  Pursuant to clause 13.2 of the GCA and the Article 28(6) of the ICC Rules, the Final Award is final and binding.

There are no grounds under the New York Convention to refuse confirmation of the Final Award.  As such, the Final Award should be confirmed and judgment should be entered in favor of Petitioner.

## IV.    Pre- and Post- Judgment Interest Should Be Awarded

Petrotrin is entitled to both pre-judgment interest and post-judgment interest on the amounts awarded to Petrotrin in the Final Award.

There is a presumption in the Second Circuit in favor of pre-judgment interest on an order and judgment confirming a foreign arbitral award under the New York Convention.  *See Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984) ("[I]t is almost unnecessary to reiterate that only if such interest is awarded will a person wrongfully deprived of his money be made whole for the loss."); *Sarhank Grp. v. Oracle Corp.*, No. 01 Civ.

13

1285 (DAB), 2004 WL 324881, at *2-3 (S.D.N.Y. Feb. 19, 2004) (stating that "[i]n *Waterside*, the Second Circuit acknowledged a presumption in favor of pre-judgment interest on awards enforced under the Convention" and granting post-award, pre-judgment interest on arbitral award "to offset its loss in value over time"); *see also Steelex S.A. v. Dasil Corp.*, No. 07-CV-2309, 2007 WL 4373262, at *2 (E.D.N.Y. Dec. 10, 2007) (confirming a foreign arbitral award under the New York Convention and granting pre-judgment interest on the damages and costs of arbitration provided for in the award); *Nat'l Dev. Co. v. Khashoggi*, 781 F. Supp. 959, 961-63 (S.D.N.Y. 1992) (confirming and ordering pre-judgment interest under the New York Convention on a foreign arbitral award that included "[c]osts of the arbitration" where respondent "has not presented any persuasive reasons for opposing the grant of pre-judgment interest that would overcome our presumption in favor of pre-judgment interest.") (internal citation and quotation marks omitted).  This presumption exists because "[t]he purpose of the Convention would be impeded were Respondent able to receive an interest-free loan by delaying payment of the award." *Sarhank Grp.*, 2004 WL 324881, at *2.

Because this Court has federal question jurisdiction in this case, the applicable rate of interest is governed by federal law. *See id.* at *4 ("District courts have federal question jurisdiction over actions under the Convention, 9 U.S.C. § 203, and accordingly, the rate of post-award, pre-judgment interest assessed is a matter of federal law.") (internal citations omitted). The applicable rate of interest is within the broad discretion of the district court, and "[i]n exercising its discretion, the Court must arrive at a pre-judgment interest rate that will fully compensate Petitioner for the diminution in value over time of its award." *Id.* (internal citations omitted).

14

Courts in this district have held that the federal post-judgment interest rate is appropriate for pre-judgment interest in connection with a petition to confirm a foreign arbitral award.  *See P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at \*3 (S.D.N.Y. Jan. 16, 2001) ("[T]he federal rate, 28 U.S.C. § 1961, is appropriate for calculating post-award, prejudgment interest in cases arising under the Convention."); *Sarhank Grp.*, 2004 WL 324881, at \*5 ("The federal rate…is consistent with the Convention's goals of fostering stability and certainty in international commercial transactions.").

Petrotrin is also entitled to post-judgment interest under 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."

Judgments enforcing arbitral awards are "money judgments within the meaning of section 1961(a).  It is, after all, of the essence of post-judgment interest that it is assessed upon payments made pursuant to a judgment but subsequent to the entry of the judgment." *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989) (granting post-judgment interest on an arbitral award providing for future payments and offsets); *see also IHX (UK) Ltd. v. Ashapura Minechem Ltd.*, No. 08 Civ. 9436 (SAS), 2009 WL 3169541, at \*3 (S.D.N.Y. Oct. 1, 2009) (granting a petition to confirm a foreign arbitral award under the New York Convention and ordering post-judgment interest on the amount provided for in the award as well as on the interest and costs provided for in the award).

An award of post-judgment interest should run from the date of judgment.  Thus post-judgment interest should accrue from the date of a judgment entered pursuant to this Petition. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998) (awarding post-judgment

interest commencing "from the date a judgment is ascertained in a meaningful way") (internal

quotation marks and alteration removed) (citing cases).

This Court should grant Petrotrin pre-judgment interest at the rate provided by 28 U.S.C.

§ 1961(a) calculated from November 29, 2012, the date that the Final Award was rendered, and

post-judgment interest at the rate provided by 28 U.S.C. § 1961(a) calculated from the date that

judgment confirming the Final Award is entered.

**V.      Petrotrin Should Be Awarded Reasonable Attorneys' Fees and Costs**

In the GCA, the parties agreed that the prevailing party in an arbitration is entitled to an

award of reasonable attorneys' fees and expenses.  Clause 15 of the GCA states:

> In the event of arbitration or suit arising from or relating to this
> Agreement, the prevailing party shall be entitled to recover its
> costs (including reasonable attorneys' fees and expenses, and
> including costs and such fees on appeal) from the non-prevailing
> party.

Kimmelman Declaration ¶ 15; Exhibit E §15.

The Tribunal concluded that Petrotrin "prevailed in the result of this case." *Id.*, Exhibit A,

Final Award ¶ 236.  It was for this reason that the Tribunal awarded Petrotrin the arbitration

costs and most of its attorneys' fees.  Accordingly, Petrotrin is entitled to reimbursement for the

attorneys' fees and costs incurred in confirming the Final Award.  *See NTT DoCoMo, Inc. v.*

*Ultra d.o.o.*, No. 10 Civ. 3823 (RMB), 2010 WL 4159459, at *3-4 (S.D.N.Y. Oct. 12, 2010)

(granting attorneys' fees in confirmation proceeding where arbitration clause provided that "[t]he

prevailing party shall be entitled to recover reasonable attorneys' fees" and citing cases); *Carina*

*Int'l Shipping Corp. v. Adam Mar. Corp.*, 961 F. Supp. 559, 569 (S.D.N.Y. 1997) (awarding

attorneys' fees and costs in a judicial action to confirm and enforce an arbitral award where the

contract provided for damages including "all costs of suit and attorney fees in any action

incurred in any action hereunder"); *Elite Inc. v. Texaco Panama Inc.*, 777 F. Supp. 289, 292

(S.D.N.Y. 1991) (awarding attorneys fees and costs in an action confirming an arbitral award where the contract provided for damages including "all costs of arbitration suit and attorneys' fees incurred in any action hereunder").

## CONCLUSION

For the foregoing reasons, Petrotrin respectfully requests that the Court grant an order (i) confirming the Final Award in all respects and directing that judgment be entered in favor of Petrotrin and against WGTL in accordance with the Final Award, (ii) granting pre-judgment and post-judgment interest on all amounts awarded to Petrotrin in the Final Award, (iii) granting Petrotrin's reasonable attorneys' fees and expenses incurred in this proceeding, and (iv) granting such other and further relief as may be just and proper.

Dated: New York, New York
      June 24, 2014

Respectfully submitted,

SIDLEY AUSTIN LLP

By: _____
    Louis B. Kimmelman

Dana C. MacGrath
Kenneth B. Meyer
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
bkimmleman@sidley.com
dmacgrath@sidley.com
kmeyer@sidley.com


*Attorneys for Petitioner*
Petroleum Company of Trinidad
and Tobago Limited

17